is now in session. Please be seated. Good morning and welcome. Judge Sung and I would like to thank Judge David Ezra of the United States District Court for the District of Hawaii for serving on the Ninth Circuit today. He has such a huge district court docket, but he is devoting his time, resources, wisdom to share it with us. We're very grateful. Thank you so very much. Thank you to his chambers as well. Always an honor. Thank you to everyone at the Pioneer Courthouse for being so welcoming and helpful to all of us visitors. Today we have a number of cases that have been submitted. Let me just quickly go through those before we have argument. Lovejeet v. Garland at the request of the party was sent to mediation. We're waiting to hear back on that. Higgins v. Kijizaki was submitted as was Stevens v. Kijizaki, United States v. Jackson, and Santos v. Newth. So we have two cases on for argument today. If counsel for McLafferty v. the Department of Veterans Affairs are ready to proceed, okay. How much time, if any, would you like to reserve for your rebuttal? That's fine. That's fine. May I proceed, Your Honor? Please proceed. Good morning. May it please the court, counsel. My name is John Baker, and I represent Dr. Robert McLafferty. We are here today to ask this court to reverse a decision entered by the Veterans Administration to terminate Dr. McLafferty's employment. We were previously at the district court addressing these issues, and now we are before the Ninth Circuit. To give you a little bit of a backdrop about what this case stems from, there was an employee who worked for and this is greatly detailed in our brief, so I won't belabor the point, but Dr. Wheatley filed an EEOC complaint. The VA, I think, fairly dropped the ball. They didn't respond to discovery, sanctions were imposed, and ultimately there was some type of a judgment that was entered against the VA. It's not entirely clear how much money really was awarded. There was front pay that was given for a period of time, but it was a significant amount of time, amount of money. When that happened initially, the VA attempted to terminate Dr. McLafferty. This was 2016. We fought those efforts. The OSC came in. The OSC conducted apparently a three-year investigation into what had happened in the Wheatley matter. What we know about the OSC investigation, however, is quite limited. What we know is there were a number of people who were interviewed throughout that. One of the people who we have on record indicated that she spoke to the OSC for hours upon hours for at least eight different sessions that she spoke with them. This gets us into the procedural issues that are really, I believe, at the heart of this case because what you have here is you have a situation where clearly there were mistakes made by the VA and somebody ultimately had to pay for that, and that turned out to be Dr. McLafferty, even though his involvement in that was incredibly, incredibly limited. So the OSC comes in. They do their investigation. They submit a letter, a one-page letter at the conclusion of their investigation where they explain what they have done. Again, it's a one-page letter. It's in the record, and I won't read the whole thing, but apparently there were also conversations that they had with higher-ranking officials at the VA saying, look, we want Dr. McLafferty to be terminated. They go on and they state as part of the letter, other information, including witness testimony, suggests strong retaliatory animus by both Drs. McLafferty and Curl based on Dr. Wheatley's EEO activities and disclosures concerning the call contract. So they have made this conclusion that there is evidence out there, witness evidence, testimony out there. Well, there's a statute here that protects Dr. McLafferty's rights when he is going to be removed. Procedurally, it's interesting because the statute came into effect after some issues at the Phoenix VA. It's been modified by Congress because parts of the statute were originally declared unconstitutional by the D.C. Circuit. But the new statute provides a couple of things. Number one, it provides that the process is intended to be quite quick. There is a limited amount of time for appeals for the grievance process to play itself out. And that's prescribed by the statute. It requires that there be a grievance process administered by the Secretary of Veterans Administration. And for our purposes, probably most important, it requires that all evidence that was relied upon needs to be provided to the individual who has been terminated. And this is really the critical part of our case because what you have here is you have the OSC that does this extensive, extensive investigation and ultimately turns over maybe 65 pages of documentation from that, which clearly they decided, they picked and chose what they wanted to provide. They go to the VA and they tell the VA, we want Dr. McLafferty terminated. And they write in their in their synopsis, look, there is good evidence here that Dr. McLafferty counsel. So I think we understand the issue. So the and you acknowledge that the statute just literally says that they have to provide the evidence in support of the proposed action. So are you contending that there was other evidence that the VA relied on that they didn't give it to you? Are you arguing essentially that there's some kind of Brady obligation that they should even turn over evidence that they didn't rely on if it might help your claim? Thank you, Judge Sung. I think the answer to that question is both. And what I would point to specifically with evidence is Dr. Misra in her aggravating factors says that there was a judgment that was entered for $4 million, all right, which is a roundabout figure. There's nothing in the file that suggests that amount. She had to have gotten that information from somewhere. There were conversations. She worked with one of the HR people and the lawyers at the VA to craft the charges. The lawyers clearly had been involved in the conversations with the OSC. Chelsea Miller had been in conversations with the OSC. But I also believe that there is an obligation to disclose it because what you are doing here is you're essentially creating a farce of, hey, we have an opportunity to challenge what the evidence is against you, but we're not going to tell you what evidence is. Can I ask you, are you challenging that the VA did not turn over the evidence that it relied on? Because I'm looking at, I guess, volume 172, and they say that the only evidence the VA used to render its decision was given to the grievant in the evidence file. All evidence in support of the proposed charges and removal was provided to the grievant. So are you saying that's a false statement? I am saying that, in my view, that's a misstatement. The reality is the documentation that they received from the OSC was all turned over to us. That's clear. So whatever documents they received from the OSC. However, there were clearly conversations with the OSC, including the conversations, we want him terminated. In fact, one individual. But how is that evidence? I mean, someone has a conversation with another official. I don't see how that's evidence that they have to turn over. Well, because it shows what is motivating the termination decision. And this is them saying this. This is the OSC saying, we want him essentially in evidentiary hearing where you could have argued, and I think you did try to show that there was an ulterior motive to terminate your client. But that's what the purpose of a grievance hearing is. You have the opportunity to introduce additional evidence. You could have questioned witnesses as to their motivations. We had a limited opportunity to question witnesses because there's no subpoena power that is involved in that process. So it's not as if it was a full opportunity. We did have a hearing. We had a hearing that lasted a full day. So yes, we certainly had that right. Did you have an opportunity to question the decision makers or did you ask to question decision makers and was denied? No, we did have an opportunity to question the decision makers. So, I think, you know, I think that there are some aggravating factors being the fact that the OSC conducted its investigation and the OSC's findings. You're conceding you got all the documents but you think there were, what, informal conversations that were relied upon that you were not privy to? Well, I think that there were. But I think more importantly, Judge Koh, is they had an obligation to produce the evidence that valid decision, right? Let's just look at the conflicts of interest. Your client did not comply with the VA handbook, which requires that if he's going to do what he's going to do, he has to get written letter from regional counsel. He didn't do that. He says, oh, my supervisors verbally told me to negotiate this contract. But if he didn't comply with the handbook, let's just look at that one case, then why shouldn't that be a valid termination? Well, Judge Koh, I disagree with the premise of the question. And I guess I would first point out what the actual charge is there, okay? Because I think we have an obligation or a right to rely upon the actual charges that have been brought. The charge itself said when he had an appointment at OHSU, you were engaged in discussions with OHSU and were making recommendations to the VA entering a surgery call contract with OHSU. There is nothing in the charge there that suggests that, hey, you did not have the requisite permission to do that. That was not something that was charged. Well, that's part of the regulation that your client was obliged to follow. And your defense is that he was directed to get a contract with OHSU. But the regulation clearly states if your job duties require you to engage in something for which you would have a conflict of interest, your responsibility is to get a waiver. Well, Judge Sung, whether that's accurate, the technical requirements are challenging. There's a lot of them. But... Wait. Let's just see how complicated that is. If you look at the VA handbook, it says VHA requires a written opinion from regional counsel that an affiliated physician or clinician may lawfully participate in the contract before the participation occurs. See the VA manual M-1, part 1, chapter 34, subparagraph 34, period 01F. That doesn't seem that complicated. The question is what is participation? And, you know, that's, yes, participation. But the way that the statute goes on to define the terms and prices, it talks about other aspects of that. It's not simply limited to any involvement whatsoever. It's pretty quite broad, the VA handbook. It specifically addresses doctors who also work for universities. It says you can't recommend. It says you can't... And Judge Sung, you're right. You can't recommend. And there is a list of things that you can't do. But one of those things that you can't do is you can't recommend. There's no evidence that Dr. His supervisors wanted him to push OHSU. I mean, there's a point at which, I mean, yes, he arguably initially OHSU was identified as a range of options. But there's a point at which in the email exchange that you point us to where I believe his supervisor says, you know, maybe OHSU isn't going to work out and your client keeps, continues to pursue almost exclusively OHSU. I don't think that there was an exclusive pursuit. Well, that's at least one. I mean, part of the problem here is that, you know, we have to view the evidence and just say, was it reasonable for the VA to construe it this way? And I understand that you argued, have argued all along, you know, there's another way to look at this. It could be innocent. But if it supports both interpretations, then we're obligated to affirm, aren't we? Well, if it supports it on the facts, I think so, but not necessarily on the law. They have an obligation to look at the rules and the provisions and comply with what those actually say. So I think that, yes, there is a significant amount of deference that this court. Yes, but there was, I'm sorry, I shouldn't have interrupted you. No, you're fine. There was some evidence in the record that, and obviously you disagree with this, that I believe it was Dr. Wheatley wanted to pursue other avenues and your client, according to Dr. Wheatley, at least, shut him down, said, no, no, can't do that. We're going to go with OHSU. Well, this gets back to our procedural problem, Judge Ezra. Dr. Wheatley was no longer with the And his statements are completely inconsistent with everything that had been said historically, going back through every single individual who testified about what that issue was. And the documentation, including my client's personnel files, or excuse me, his evaluations where he was directed to create, to get these contracts. And so to suggest that somehow Dr. Wheatley, who never testified, all we get, and this, again, this goes to the procedural issues because we don't know exactly what Dr. Wheatley said. We just get one little snippet. And that's the inherent problem with this case. We don't have the ability to challenge it. And so all we're doing is we're saying, hey, look, the OSC can come in and say, this guy's guilty, fire him. And you say, okay, we fire him. So there's really no process there to challenge what the actual decision is. There is no process that exists. Well, you did have a grievance process in which you could challenge the charges against your client. Well, you can challenge it, but the people who are making the decision are the very same people who have been told by the OSC what to do. And so, you know, why have the process? Well, ultimately, I mean, if you had, part of the problem here is that they had a legitimate base, even assuming, even assuming OSC telling the VA to fire your client was part of their motivation, right? At most we would, and I'm not even sure that would be an improper or illegal motive, but even assuming that it is, then arguably this would be a mixed motive case where they had different reasons to terminate their client, at least some of which was the evidence of the conflict of interest and the retaliatory action. And then you still have the problem that there is sufficient evidence at this stage, you know, we're reviewing for sufficiency of the evidence to support those charges, and you haven't established either, you know, pretext or that they wouldn't have fired him based on that evidence, even absent the improper motive. Well, I disagree with the sufficiency of the evidence, and I think that we have outlined that in our brief, and I know the court will, and I do appreciate the court's willingness. I'm over my time, so I don't want to take away from counsel's time, but I do appreciate it. All right, yes, you're 49 minutes over time, but we'll give you some time for rebuttal. 49 seconds, sorry, not minutes. I think the marshals would have taken him out of here. Or taken us out, I don't know. Yes, one or the other. One or the other. All right, go ahead, please. Good morning, Your Honors. May it please the court. I'm Assistant U.S. Attorney Sean Martin. I'm here for the VA appellees. The district court correctly granted the government's summary judgment motion against plaintiff's claims. The VA abided by its procedural requirements under the Title 38 statute we're talking about today, and as the district court concluded, the VA's termination decision was supported by substantial evidence. You know, counsel, at least just for my purposes, I think we know what the record says. Opposing counsel argument essentially is that this was a kangaroo court, if you want to it bluntly, that the people who wanted the decision to be made were the ones who were making the decision, and that he had very little opportunity to challenge it or to bring up any relevant evidence. He had no subpoena power, and essentially he was, if you will, railroaded into his firing. Why, in your view, is that not correct? Well, it's not correct because the VA abided by the procedures that Congress established, you know, for a termination decision for a high-level employee like Dr. McLafferty. You know, Congress said, you've got to give, you know, a doctor like Dr. McLafferty advance notice of the proposed removal, and you've got to give him a file containing all evidence in support of the proposed action. That's exactly what the VA did, and Dr. McLafferty, through counsel, was able to respond in great detail, make his arguments, submit hundreds of pages of evidence, and then cross-examine witnesses, call his own witnesses, submit documents for a full-day grievance examiner hearing. He received the process that was due, the process that Congress established, and we don't read the briefing as articulating any type of constitutional due process challenge in this matter. Congress told the VA to supply the evidence, like I said, in support of the action, not all evidence whatsoever, and, you know, the process worked here because Dr. McLafferty was able to respond in detail and put his record together and cross-examine the VA deciding officials at the hearing. And I would also add, Your Honor, that nothing prevented Dr. McLafferty at the district court for Judge Mossman, in that case, from attempting to supplement the record. He never moved Judge Mossman to supplement the record that it was insufficient for judicial review. He didn't attempt to issue any subpoenas for any of these officials involved or to Dr. Wheatley during the district court. So it seems a little too late, now, on appeal for the first time, to say, well, it was wrong at the beginning when he didn't make the case to the district court. I would also point out that with regard to the reliance by counsel on... But it had to issue subpoenas, right? He could have just noticed depositions for any witness he wanted in the district court action. I believe he could have, yes. Now, counsel relied on, well, you know, this is the Office of OSC, and there was more. OSC conducted its own investigation. We didn't get anything. But I think it's key that Dr. McLafferty's counsel conceded to Judge Mossman that, and this is at 1 ER 24, that the VA didn't have the power to provide anything more than it obtained from OSC. And the record also shows us that the VA asked OSC for further documents from OSC, but OSC declined to provide the VA with those documents. So basically, the VA's decision stands or falls on the documents the VA assembled in support of the action. And the documents the VA didn't have, it couldn't support the decision it made. But we do think district judge got it right, that the decision had substantial evidence support. And I would then turn to the merits, unless the panel has any questions about the other procedural arguments about the timelines during the grievance process, things like that. No. On the timelines, it seems that some of the delay was requested by Mr. Baker himself, or they were disclosed to the employee, which is what's required by the handbook. So I'm not concerned about the timeline. But can you address the issue about that there were these conversations that were not disclosed, the argument that Mr. Baker just made? Well, if there are conversations again, I would say, well, cross-examine the VA witnesses about that at the full day grievance hearing, or at district court, work that evidence, try to get that evidence into the record. I don't think you can just generally say people had conversations and leave it at that, and then ignore that you had your rights to go look into that during the hearing. And did Mr. Baker cross-examine witnesses about any conversations they may have had with decision makers in the grievance hearing? He certainly had the opportunity to. Dr. Misra testified at the hearing, and Mr. Goodspeed, who made the final decision in March 2020 for the VA, he testified at the hearing. So those are the people who, those were the players at the VA. What about Mr. Baker's argument that the decision makers were basically either biased or they were just doing the bidding of OSC? Well, I don't think that's correct. We don't want to lose sight of the fact that the VA's proposed action and its final decision was based on what Dr. McLafferty did at the VA. It's based on his actions at the VA, not on what the OSC did. Yes, the VA looked to the EEO decisions, and it looked to OSC's short findings letter, you know, I guess as confirmation, as aggravating factors, but it made its own findings and its proposed action. That was looked at by Judge Mossman as well. That same argument was made there. I believe it was. I believe it was. I think it was. Well, why don't I turn to the merits then? I would agree with what appears to be the panel's sort of gut that District Judge Mossman was correct in finding substantial evidence of a conflict of interest. You know, there were not only the, you know, the emails between Dr. McLafferty and the chair of the OHSU Plastic Surgery Department where he ventured into specifics about how much, you know, doctor time would be needed per, you know, two-week period and was asked about the money. And, you know, Dr. McLafferty testified at the grievance hearing that he was, you know, that the OHSU Plastic Surgery Chair was under the impression that he could talk about money. The emails are also concerning because they supplied substantial evidence that Dr. McLafferty was advocating for, in essence, a right of first refusal by OHSU. You know, he said, I believe it was in February 2014, to OHSU's Plastic Surgery Chair, hey, this is going to be some pretty low maintenance income and unless you wanted to go to the community surgeons, I think this would be a good way to bring some money into OHSU. You know, obviously the problem with that is Dr. McLafferty was a paid employee of OHSU and, you know, by imputation, because OHSU would be gaining financially, you know, he would be gaining financially and even with an affiliated institution, you know, as the panel pointed out, there's still a problem with the VA's conflict of interest. And on top of that, Dr. McLafferty, I don't think it's unreasonable to expect that a high-level position like Chief of Surgery would be expected to, you know, if anything, exercise a higher level of diligence and to know the handbook and abide by it and not simply say, well, somebody said to go do it, so that means the rules don't apply because somebody said it. We also don't think there's any evidence in the record to back that statement. You know, somewhere in the record, I saw some argument that, well, you know, other people do this kind of thing and so therefore I thought it was all right. I mean, am I missing something there? Well, that's the argument. I mean, I thought that was the argument that at least he made at some point. I think he made the argument, but, you know, I'm not aware of evidence that really backs that up. Or, you know, getting involved in a potential contract is one thing, but then for Dr. McLafferty to go ahead and have those specific discussions, I think is something else. And I think there's also a concern and substantial evidence of a problem when there's evidence for ER 622 of Dr. McLafferty recommending OHSU to his VA management. He told VA management in May 2014, quote, again, that an OHSU call contract was preferable to another approach. And at 6 ER 1133, in his self-assessment, Dr. McLafferty himself took credit for development of a call coverage contract with OHSU. So between the letters with the plastic surgery chair at OHSU, the other documents I'm citing, District Judge Mossman was correct that there was substantial evidence of a conflict of interest. Well, if nothing else, you can't, nobody can fault him for trying to hide it. This does not appear to be something he was doing, as they used to say in trial law in the East Coast under the sheets. I mean, this was pretty obvious. He was doing it right out in the open and bragging about it. Yeah, I think that's what the record shows us. I had a question earlier. Mr. Baker said that there was a document that memorialized the instruction to Dr. McLafferty to, you know, give the contract to OHSU. I don't recall that being part of the record. Are you familiar with what that document might be? I haven't seen any document like that. Okay. I'm not aware of that document. What about the, this evidence, which I thought was, if true, somewhat compelling that Dr. Wheatley had made some effort to reach out to others and wanted to do that. And then the allegation is, at least, that Dr. McLafferty said, stop it. We're going with, you know, OHSU. Do you remember that evidence? Yeah, there is some evidence of that. And it was that Dr. McLafferty told Dr. Wheatley, listen, you're expected to take steps to work on a partnership with either OHSU or community plastic surgeons, one or the other. So it's concerning that the record shows us that he was then telling Dr. Wheatley, don't work with community surgeons, only work with OHSU. And now he says he, there's no way to verify that. He couldn't talk to Wheatley and this was his due process concern. Well, let's not forget that Dr. McLafferty, as part of this grievance process, submitted to the VA his sworn affidavit during the EEO on the Wheatley matter. So he got his side of the story and he got his testimony during that very investigation. Okay. Yeah. Would the panel like any argument regarding the prohibited personnel practice and the negative service chief evaluation? I don't know if there are any questions in the panel. I don't have any, but I don't know about my colleagues. I don't have any questions. Judge Song, do you have any? No. Okay. Thank you. Thank you very much. All right. You exceeded time, but we'll give you two minutes. Go ahead, please. Hey, please, court and counsel. There are a lot of factual misstatements that are made. I don't have the time to go through all of them, but I find it very interesting that at this point, the VA is arguing about process when they completely abdicated the process that they were supposed to follow in this proceeding. On the process issue, what prejudice did the delays cause your client? Well, first of all, and if I can, I want to address Judge Koh's question that she was concerned about the timelines that I had requested extensions. I did not do that. What was going on, I repeatedly pushed, get this done, get this done. We had a grievance examiner who was delaying things. And we talk about actual prejudice. Well, first of all, there are timelines that apply to all of us. All right. Congress says in their very statute, the process, it is intended to be a quick process. And so, there's another statute that says when we engage in judicial review, the rule of harmless error applies. So, what prejudice? Well, okay. There's the prejudice is, number one, you have them saying that there's no policies, that they don't have to follow their policies, but he misses a technical policy, and that's a problem. Second of all, conflict of interest is a technical policy, similar to a timeline in this case? Yeah, I don't. Well, first of all, I disagree that there is a conflict of interest. And I think that a lot of the statements that have been made are inaccurate and erroneous, and I would really appreciate if the Court would thoroughly review the record on that. And I know that you will, and I appreciate the time. But those statements are not accurate. And so, we talk about it. You know, the personnel, Judge, and again, there were a lot of questions that were asked, but Judge Koh, you asked about where is it, where is the document that says he was directed to do these things? There's a lot of evidence on that. We have Dr. Edwards' testimony about what he told him exactly when he first came in. We have Dr. Anderson's statement. We have letters that were written to Dr. Wheatley all along. The only, and not only that, in his personnel, in his evaluations, his annual evaluations, and again, I know I'm over, so I do appreciate it, and I haven't had an opportunity to even touch upon all of the panel's questions, so I apologize for that. But I do ask that the Court reverse the decision, because what has happened is simply not fair procedurally to my client. And that's just not okay. And for the VA to say that, hey, he didn't follow all of the technical policies when they disregarded theirs. All right. Do you have any further questions, Judge Sung or Judge Ezra? I do not. Thank you. Okay. Thank you. And thank you to both counsel for your very helpful arguments today. We very much appreciate it.
judges: KOH, SUNG, Ezra